UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 04-838 (RCL) |
| QUIK SERVE FOODS, INC., | ) ) | |
| Defendant. | ) ) | |
| QUIK SERVE FOODS, INC., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 04-687 (RCL) |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

**Introduction**

This matter comes before the court on Washington Metropolitan Area Transit Authority's ("WMATA") motion for partial summary judgment on Counts I and II, and the punitive damage component of Count V, of the complaint filed by Quik Serve Foods, Inc. ("Quik Serve").

Counts I & II allege breach of contract, specifically, the option to purchase and seek damages and specific performance. Count III also alleges breach of contract, specifically, hindrance of the terms of the contract and seeks damages. Count IV alleges breach of the right of first refusal. Count V alleges tortious interference with prospective business advantage and seeks compensatory and punitive damages. Finally, Count VI requests temporary and permanent

injunctive relief.

WMATA alleges that Count I and II are time barred by the prescribed statute of limitations, and that the punitive damages claim in Count V must be dismissed because WMATA cannot be sued for punitive damages. Upon consideration of WMATA's motion and reply, the opposition thereto, as well the relevant law, partial summary judgment will be granted for WMATA on Counts I and II, and on the punitive damages component of Count V.

**Factual Background**

On or about August 4, 1998, WMATA entered into a commercial ground lease ("Lease") with Quik Serve for land located at 8th St and Florida Avenue, N.W. in Washington D.C. ("Leased Premises"). WMATA Mot. Summ. J. at 2. For this case, the relevant facts are those dealing with Quik Serve's alleged exercise of the option to purchase set forth in the lease. Section 21.1 of the Lease provides, "TENANT shall have the right to purchase the Leased Premises at the appraised fair market value of Four Hundred, Seventy-Five Thousand and no/xx Dollars ($475,000) for a period of two (2) years from the Date of Lease Execution. Id. Thereafter, the option to purchase price will require a new appraisal of the fair market value." Id. at 2-3. There were no other provisions in the contract pertaining to this option.

In March, 2000, Quik Serve wrote WMATA a letter stating that it was in the critical stages of negotiating with a third party as to a proposed development of the Leased Premises which was a "higher and better use of the property than originally contemplated." Id. at 3. Quik Serve requested amendments to the Lease specifically, that the due diligence period be extended 120 days and that the purchase option set forth in the Lease be extended for an additional two

year period.  Id.

Quik Serve alleges that it sent a letter by regular mail on April 7, 2000, exercising the purchase option.  Id.  WMATA disputes this, but for the purposes of this proceeding, stipulates that the letter was sent in an appropriate manner, and it constituted a proper and timely exercise of the purchase option.  Id.  Although Quik Serve never tendered the $475,000 purchase price, Patrick Jenkins, the co-owner of Quik Serve, maintains that he had the resources to get the $475,000.  Quik Serve Opp'n Summ. J. 8.  Quik Serve claims that it did not tender the purchase price because WMATA did not provide the framework to do so, where in all previous transactions WMATA had provided it with such a framework.  Id. at 8.

Quik Serve also alleges that after the April 7 letter, Jenkins met with Alvin McNeal, in WMATA's real estate office.  Id. at 5.  Jenkins believed that once he exercised the option, WMATA had no choice but to sell them the property. WMATA Mot. at 3.  Jenkins stated that, at the meeting, McNeal did not respond to the exercise of the option.  Quik Serv. Opp'n. at 5.  Jenkins also stated he spoke with Philip Scales, another WMATA employee, who responded similarly.  Id.

On May, 18 2000, Jenkins received a letter from WMATA, which did not address the option, but only discussed Quik Serve's proposal to amend the lease agreement.  Id.  Jenkins was confused by the letter because it did not refer to the option.  WMATA Mot. at 4.  Jenkins thought it was an effort by WMATA to block Quik Serve from the joint venture with the third party.  Id.  Thereafter, Jenkins unsuccessfully attempted to schedule another meeting with McNeal.  Id.  This communication failure led Jenkins to believe that WMATA, in its self interest, intentionally delayed the purchase.  Quik Serve Opp'n. at 5.  Indeed, he stated that WMATA's delay stalled

the project's financing, as well as his negotiations with the third party. Id. at 5-6.

The original Lease required that Quik Serve build a restaurant on the Lease Premises. In May 2003, the restaurant was still not built, accordingly, WMATA served Quik Serve with a notice of default, and subsequently a notice of termination. On April 27, 2004, Quik Serve filed this lawsuit in this Court, and WMATA filed a landlord/tenant action for possession of the Lease Premises in May 2004 in the Superior Court of the District of Columbia. On May 25, 2004, Quik Serve removed the case to this Court, to consolidate the cases.

## **Legal Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To determine which facts are material, a court must look to the substantive law on which each claim rests. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue is one whose resolution could establish an element of a claim or defense and consequently affect the outcome of the action. Celotex, 477 U.S. at 322.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. Anderson, 477 U.S. at 255. If summary judgment is denied, there must be evidence on which the jury could reasonably find for the non-moving party. Id. at 252. A nonmoving party must establish more than a "mere existence of a scintilla of evidence" in support of its position. Id.

Furthermore, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment may be granted. <u>Celotex</u>, 477 U.S. at 322.

### Analysis

I.    **Counts I & II are Time Barred by the Statute of Limitation**

WMATA claims that Counts I & II are time barred by the statute of limitations. Generally, in a contract action, the statute of limitations expires three years after the accrual of the action. DC Code § 12-301(7). In a simple contract, implied or express, the accrual of the action is the breach of the contract. <u>Ehrenhaft v. Malcom Price</u>, 483 A.2d 1192, 1198 (D.C. 1984). Under certain circumstances, the statute of limitations may be tolled where the "fact of injury was not readily apparent and indeed might not become apparent until several years after the incident causing the injury had occurred." <u>Id.</u> at 1201. Situations where the discovery exception tolls the statute of limitations include: fraud, medical malpractice, legal malpractice and fraudulent concealment. <u>Diamond v. Davis</u>, 680 A.2d 364, 371-72 (D.C. 1996).

Contrary to Quik Serve's claims, the statute of limitations did not accrue at the time of discovery. It was readily apparent to Quik Serve that WMATA had breached the contract through its action, or lack thereof, in response to Quik Serve's desire to exercise the option. There is little doubt that hindrance or prevention of performance is a breach of contract. <u>Minmar Builders v. Beltway Excavators</u>, 246 A.2d 784, 787 (D.C. 1968). In April 2000, Quik Serve allegedly exercised the purchase option. WMATA Mot. at 3. WMATA never responded to the alleged exercise of the purchase option despite repeated attempts by Quik Serve to raise the issue. Indeed, Jenkins thought that WMATA was trying to block the joint venture. <u>Id.</u> at 4. By

September 2000, Jenkins believed that WMATA was intentionally delaying the purchase and in doing so frustrated Quik Serve's joint venture negotiation and its ability to obtain the necessary financing.  Id. at 5.

WMATA's failure to respond to the alleged exercise of the option on numerous occasions, hinted at a breach of the contract.  The passing of the deadline for exercising the purchase option should have further alerted Quik Serve that there was a potential breach of contract.  Indeed, by September, 2000, Mr. Jenkins thought that WMATA was trying to block the venture.  Quik Serve Opp'n. at 5.  At this point, Quik Serve either knew or should have known that WMATA had breached the contract.[1]  The breach occurred when WMATA substantially hindered the exercise of the purchase option, not when WMATA notified Quik Serve of its default and the termination of the contract.  See R.A. Weaver and Associates v. Haas and Hayni Corporation, 663 F.2d 168, 176, 213 U.S.App.D.C. 404, 412 (D.C. Cir. 1980) (noting that the rule applies not only when the option is completely foreclosed but also when the option is substantially hindered).

Finally, the issue is ripe for summary judgment.  Quik Serve's reliance on Fred Ezra Co. v. Psychiatric Inst. of Washington, 687 A2d 587, 592 ("what constitutes the accrual of a cause of action is a question of law but when accrual actually occurred in a particular case is a question of fact") is misguided.  Fred Ezra Co. held that summary judgment is inappropriate when the

---

[1] Furthermore, the breach may have occurred as early as May, 2000.  In April 2000, Quik Serve attempted to exercise the purchase option.  WMATA's reply letter, dated May 18, 2000, indicated a posture adverse to the terms of the contract because WMATA refused to acknowledge the change in the legal relationship between the parties.  Even if the existence of the breach was unclear at that point, it was certainly clear to Quik Serve by September, 2000.  Therefore, to avoid the statute of limitations Quik Serve would have had to file the complaint by September, 2003.

discovery exception applies.  Id. at 593.  There, summary judgment was improper because the commencement of the accrual of the action was unclear.  Id.  In such a situation the court must make a fact-intensive inquiry to resolve the issue.  Id.  In the present case, the nature of the breach was apparent and easily discoverable, therefore, there is no material issue of fact regarding the accrual of the cause and summary judgment is appropriate.  Since summary judgment is appropriate in this situation and it was apparent to Quik Serve that WMATA had substantially hindered the exercise of the option, Counts I & II are time barred by the statute of limitations.

**II.     WMATA has Immunity Against Punitive Damages**

Quik Serve seeks punitive damages against WMATA based on its alleged tortious interference with Quik Serve's prospective business opportunities.  Article II Section 4 of the WMATA Compact provides that WMATA is a governmental unit and an instrumentality of the Compact signatories.  Lucero-Nelson v. Washington Metro. Area Transit Auth., 1 F.Supp.2d 1, 10 (D.D.C. 1998).  WMATA enjoys the same eleventh amendment sovereign immunity as its signatories (Virginia, Maryland, and the District).  Id. (citing Sanders v. Washington Metropolitan Area Transit Authority, 819 F.2d 1151, 1154 (D.C. Cir. 1987).  Section 80 of the Compact provides that the WMATA is "liable for its contracts and for its torts . . . committed in the conduct of any proprietary function."  This Court has decided that "as a matter of law, logic, and public policy . . . punitive damages are unavailable against WMATA, even for torts arising out of its proprietary functions."  Wainwright v. Washington Metro. Area Transit Auth., 958 F.Supp. 6, 10 (D.D.C. 1997) (Lamberth, J.).

Quik Serve attempts to rely on the dictum of Smith v. District of Columbia, 336 A.2d 831

(D.C. 1975), which states that a showing of extraordinary circumstances might warrant an award of punitive damage, where a municipality would otherwise be immune.  As this Court has previously noted, "nowhere in Smith is there guidance as to the nature, frequency, duration or intensify or other characteristics of the requisite 'extraordinary circumstances'."  Wainwright v. Washington Metro. Area Auth., 903 F.Supp. 133, 137 (D.D.C. 1995) (Lamberth, J.).  Quik Serve claims that WMATA's action not just the result of negligence, but of intentional, willful and malicious interference.  It also alleges that WMATA knew that Quik Serve's first intended use of the property was not the "best and highest," but allowed the lease to continue solely as a revenue generating contract.  Quik Serve states that this type of business interference was beyond the scope of WMATA's authority and its own Charter.  Quik Serve cites no case law to bolster its claim that these are extraordinary circumstances, and in the past when courts have considered the exception, they have declined to apply it.  See Rieser v. District of Columbia, 563 F.2d 462, 481 (D.C. Cir. 1977) (declining to apply this exception where plaintiff parole officers breached their duty to disclose criminal background of a parolee to resident's where parolee was employed, and that parolee went on to rape and murder one of those residents).

This Court is not inclined to elevate the circumstances here to the level of "extraordinary circumstances" which might allow a claim for punitive damages.  The public policy and precedent against punitive damages is well-established, and this court has no reason to question it in under these circumstances.

### Conclusion

For the foregoing reasons this Court grants WMATA's Motion for Partial Summary Judgment as to Counts I, II and the punitive damages component of Count V.

A separate order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, September 22, 2005.